UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAINE COMMUNITY HEALTH OPTIONS, | : : | |
| Plaintiff, | : : | |
| v. | : | C.A. No. 20-10JJM |
| CVS PHARMACY, INC., | : : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Pursuant to § 7 of the Federal Arbitration Act (9 U.S.C. § 7) ("FAA"), Maine Community Health Options ("Health Options") has petitioned for enforcement of an arbitration subpoena duces tecum issued to CVS Pharmacy, Inc. ("CVS"), in an American Arbitration Association arbitration ("Arbitration") of its dispute with Navitus Health Solutions, LLC ("Navitus"), a pharmacy benefits manager. ECF No. 1 ("Petition"). In the Arbitration, Health Options claims that Navitus failed properly to calculate the usual and customary ("U&C") prices that it charged Health Options for drugs purchased by its members, resulting in millions of dollars in overcharges. The Arbitration is presided over by a panel of arbitrators ("Panel") that authorized the issuance of subpoenas to the retail pharmacies in the Navitus network, including CVS.

Health Options filed the Petition because CVS refused to comply, beyond providing Health Benefits with information regarding its "Health Savings Program" ("HSP"), unless ordered to do so by a court. Focused on the period from January 1, 2014, until June 30, 2016, the Petition asks the Court to compel CVS to produce price lists, transaction data, and documents, with some requests based on a "sufficient to show" standard and others encompassing "all communications" or "all documents and communications" relating to CVS's

price for retail transactions with individuals who pay without insurance. ECF No. 1-2. In opposition, CVS argues that this Court lacks subject matter jurisdiction. And if there is subject matter jurisdiction, it contends that it should not be further ordered to comply because of the burden of doing so and the lack of materiality or relevance of the requested data and documents.

The Petition has been referred to me for determination. However, although it presents a dispute that may be boiled down to a simple discovery scuffle, its resolution is also outcome-determinative of the entire case. Therefore, I have addressed it in this report and recommendation. 28 U.S.C. § 636(b)(1)(B).[1]

## I. LAW AND ANALYSIS

### A. Subject Matter Jurisdiction

Although the FAA animates the Petition, it does not supply federal jurisdiction. Joia v. Jozon Enters., Inc., C.A. No. 18-365WES, 2019 WL 1226986, at *5 (D.R.I. Mar. 13, 2019). "[F]or jurisdiction over controversies touching arbitration," the FAA "bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581-82 (2008); see UBS Fin. Servs. Inc. v. Asociacion de Empleados del Estado Libre Asociado de P.R., 223 F. Supp. 3d 134, 137 (D.P.R. 2016) ("To open the federal court's door, a party must demonstrate an independent basis for jurisdiction over the arbitration-related

---

[1] This approach is consistent with recent guidance from our Circuit. ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC, No. 18-1405, 2020 WL 966257, at *5-7 (1st Cir. Feb. 28, 2020) (favoring functional interpretation of "dispositive" that looks at the motion's potential effect on the litigation). It also aligns with applicable decisional law. See Conley v. Competitive Techs., Inc., No. MC 18-15-JJM-PAS, 2018 WL 4562350, at *1 n.1 (D.R.I. Sept. 24, 2018) (report and recommendation on motion to appoint receiver, which had "a more dispositive flavor because it [was] the only relief sought in the case"); Westlake Vinyls, Inc. v. Cooke, C.A. No. 3:18MC-00018DJHLLK, 2018 WL 4868993, at *1 (W.D. Ky. Aug. 21, 2018), adopted, 2018 WL 5306665 (W.D. Ky. Oct. 16, 2018) ("Because enforcement or refusal to enforce the arbitrators' subpoena in this case would dispose of the entire matter before the Court as the underlying action is not before the Court, the Court will treat the pending petition to enforce subpoena as case-dispositive and proceed by way of a report and recommendation."); cf. Joia v. Jozon Enters., Inc., C.A. No. 18-365WES, 2019 WL 1226986, at *5 (D.R.I. Mar. 13, 2019) (report and recommendation for petition to compel arbitration under 9 U.S.C. § 4).

dispute."). The burden of establishing federal jurisdiction over this proceeding to enforce an arbitral subpoena rests on Health Options. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).

Health Options has asserted diversity jurisdiction based on 28 U.S.C. § 1332(a)(1). Petition ¶ 10. This requires that "the matter in controversy exceeds the sum or value of $75,000" and the parties on either side are "citizens of different States." Id. The parties concur that diversity is met: Health Options is a citizen of Maine, and CVS is a citizen of Rhode Island. Petition ¶¶ 4, 6. As to the jurisdictional minimum, unless challenged by the opposing party or the Court, a general allegation is sufficient to support jurisdiction. Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991) (citing Gibbs v. Buck, 307 U.S. 66, 72, (1939)). Here, however, CVS has mounted such a challenge grounded in the parties' vigorous disagreement over how to measure the jurisdictional minimum in the FAA context. Relying on what it contends is the right yardstick, CVS argues that Health Options has failed to sustain its burden of demonstrating that there is $75,000 in controversy. Therefore, it asks the Court to dismiss the Petition.

In a case where the plaintiff seeks money damages, calculating the § 1332 minimum is relatively simple – the claimant must show that the pecuniary consequences of the judgment might crest $75,000 to sustain diversity jurisdiction. Kilgore v. Providence Place Mall, C.A. No. 16-135S, 2016 WL 3092990, at *3 (D.R.I. Apr. 1, 2016), adopted, C.A. No. 16-135 S, 2016 WL 3093450 (D.R.I. June 1, 2016). But that is not our case. Health Options' Petition pursues relief analogous to an injunction, a court order compelling CVS's compliance with an arbitral subpoena. Petition at 12. In such circumstances, "when the relief sought is declaratory or injunctive," it is well settled that "'the amount in controversy is measured by the value of the

3

object of the litigation.'" Hernandez v. US Bank, N.A., 318 F. Supp. 3d 558, 559 (D.R.I. 2018) (quoting Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)). Guidance in our Circuit permits the calculation to focus on the value to the plaintiff of the equitable relief sought, or it may be based on the "defendant's viewpoint," resulting in jurisdictional findings that rest on "the alleged pecuniary burden on the defendants were plaintiffs to prevail." Grotzke v. Kurz, 887 F. Supp. 53, 56-57 (D.R.I. 1995). Importantly, the party asserting jurisdiction is not required to prove an injury to itself or the other party definitively valued at more than $75,000. As the First Circuit has held, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Dep't of Recreation & Sports of P.R., 942 F.2d at 88 (emphasis supplied).

While this guidance is workable for a typical case where the underlying dispute is between the parties before the court, the law is less well developed regarding the applicability of these principles in the context of actions to enforce arbitration subpoenas. As of this writing, federal district courts around the country embrace diametrically opposed approaches to the measurement of the amount in controversy, differing principally on whether and to what extent the underlying arbitration affects the outcome.

Some courts have held that the value of the underlying arbitration controls or plays a significant role in calculating the amount in controversy. See, e.g., Next Level Planning & Wealth Mgmt., LLC v. Prudential Ins. Co. of Am., No. 18-MC-65, 2019 WL 585672, at *2 (E.D. Wis. Feb. 13, 2019), adopted, No. 18-MC-65-PP, 2019 WL 1466049 (E.D. Wis. Apr. 3, 2019); Wash. Nat'l Ins. Co. v. Obex Grp. LLC, No. 18 CV 9693 (VB), 2019 WL 266681, at *4 (S.D.N.Y. Jan. 18, 2019); Fed. Ins. Co. v. Law Offices of Edward T. Joyce, P.C., No. 08 C 0431,

2008 WL 4348604, at *1 (N.D. Ill. Mar. 13, 2008). These courts reason that, if the petitioner seeks, for example, "$134 million in damages in the underlying arbitration [, and] documents responsive to the summonses pertain to only a small fraction of that sum, the amount in controversy requirement would still be satisfied." Wash. Nat'l Ins., 2019 WL 266681, at *4. With an arbitration that seeks to recover millions of dollars in alleged overcharges from Navitus, Health Options marshals this line of cases in support of its argument that the $75,000 amount-in-controversy in its dispute with CVS is readily established. If Health Options is right on the law, it is clear that this Court has diversity jurisdiction.

In challenging the amount in controversy, CVS relies on the holdings of other courts – these conclude that the money at issue in the underlying arbitration is not applicable to the federal court's § 1332 jurisdictional analysis. Royal Merch. Holdings, LLC v. Traeger Pellet Grills, LLC, No. 2:19-MC-00108-DB-EJF, 2019 WL 2502937, at *5 (D. Utah June 17, 2019), adopted, No. 2:19-MC-108, 2019 WL 2774280 (D. Utah July 2, 2019); Zurich Ins. PLC v. Ethos Energy (USA) LLC, C.A. No. 4:15-CV-03580, 2016 WL 4363399, at *3 (S.D. Tex. Aug. 16, 2016); In re Application of Ann Cianflone, No. Misc. 3:14-MC-63, 2014 WL 6883128, at *1 (N.D.N.Y. Dec. 4, 2014); Chicago Bridge & Iron Co. N.V. v. TRC Acquisition, LLC, C.A. No. 14-1191, 2014 WL 3796395, at *2 (E.D. La. July 29, 2014). Emphasizing the limited reach of federal jurisdiction, these courts point out that the federal court action does not involve the parties joined in the arbitration – rather, it involves an arbitration party and a third party who is not named in the arbitration. See Royal Merch. Holdings, 2019 WL 2502937, at *4 ("[T]he controversy before this Court relates to the enforcement of the subpoena served on [the third party], not the underlying arbitration."). These cases focus on the adverse impact of subpoena

5

compliance on the third-party. See id. At *5 (with no facts to establish that subpoena compliance viewed in isolation would meet $75,000 threshold, petition dismissed).

Fortunately, this Court does not need to resolve this knotty conundrum. If the Court accepts and applies the Royal Merch. Holdings test, as CVS argues it should, it is clear that this record contains more than enough to permit the exercise of diversity subject matter jurisdiction under 28 U.S.C. § 1332. This conclusion rests on CVS's declarations and the arguments it offered to support its alternative contention that subpoena compliance would impose a substantial burden.

First, William Boyd, CVS's Information Technology Director, laid out his experience in extracting data and his specific experience with the data on U&C prices and the HSP program; he estimated that compliance with Health Options' subpoena would require at least two months and that the costs "would reach into the tens of thousands of dollars." ECF No. 13-5 ¶¶ 3, 8 ("Boyd Decl."). Second, CVS submitted a declaration from its legal counsel, Attorney Grant A. Geyerman, who has represented CVS in many matters involving third-party subpoenas. ECF No. 13-4 ¶ 2 ("Geyerman Decl."). Attorney Geyerman predicts that the arbitral subpoena "is quite unlikely" to cause CVS to "incur more than $75,000 in fees," id. ¶¶ 4-5, but stops short of asserting that just the transactional costs of subpoena compliance would never exceed $75,000. Put differently, focusing only on the transactional costs associated with subpoena compliance, the Boyd/Geyerman declarations are enough to establish "facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Dep't of Recreation & Sports, 942 F.2d at 88. Nor can the Court ignore CVS's vociferous argument that the burden of compliance with Health Options' subpoena includes the injury from exposure to third parties of its extremely confidential material, as well as the incalculable injury if its produced materials

were used in collateral proceedings. Coupled with CVS's expectation that the cost of compliance will approach and conceivably exceed $75,000, it is clear that the burden imposed on CVS were Health Options to prevail is more than sufficient to meet and likely beat the jurisdictional minimum.

To recap, whether the Court looks at the value of the underlying arbitration as Health Options argues, or limits its analysis to "the pecuniary burden on [CVS] were [Health Options] to prevail" in obtaining the relief sought by the Petition, Grotzke, 887 F. Supp. at 56-57, the established facts indicate that "it is not a legal certainty that the claim involves less than the jurisdictional amount." Dep't of Recreation & Sports, 942 F.2d at 88. To the contrary, I find that, viewed through the lens of Royal Merch. Holdings, the amount in controversy is likely far more than $75,000. Therefore, I recommend that the Court find that it has subject matter jurisdiction under 28 U.S.C. § 1332.

### B. Burden and Materiality

#### 1. Applicable Law

CVS's alternative reasons why it should not be ordered to comply ask the Court to focus on the lack of materiality of the requested data and documents and the burden of subpoena compliance. These arguments frame a threshold issue for the Court – what is the proper legal lens through which to examine CVS's objections. They require consideration of the FAA's § 7 and its displacement of Fed. R. Civ. P. 26(b)(1), but not Fed. R. Civ. P. 45(d)(1).

Congress enacted the FAA, including its discovery procedures, to "overcome judicial resistance to arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 43 (1st Cir. 2010) (citing Vaden v. Discover Bank, 556 U.S. 49, 58 (2009)). Section 7 of the

FAA authorizes arbitration panels to issue subpoenas for "material" evidence. 9 U.S.C. § 7. Consistent with this delegation, courts uniformly construe the FAA as empowering the arbitration panel – and not the courts – to assess what is material to the arbitration dispute. See, e.g., In re Sec. Life Ins. Co. of Am., 228 F.3d 865, 871 (8th Cir. 2000) (courts not required to assess materiality of arbitration panel's subpoena; such a requirement "is antithetical to the well-recognized federal policy favoring arbitration, and compromises the panel's presumed expertise in the matter at hand"); Me. Cmty. Health Options v. Walgreen Co.,[2] No. 18-MC-0009, 2018 WL 6696042, at *5 (W.D. Wis. Dec. 20, 2018) ("Walgreens argues that the subpoenaed data is overly broad because it seeks information about customers unrelated to the case, but this goes to materiality, which is a matter for the arbitration panel."). Thus, the court's traditional relevancy determination based on Fed. R. Civ. P. 26(b)(1) is set aside in favor of the arbitration panel's determination of materiality. At the same time, CVS is not without a remedy. Neo Ivy Capital Mgmt. LLC v. Savvysherpa LLC, Case No. 18-mc-0094, 2019 WL 1435058, at *3 (D. Minn. Mar. 3, 2019). Courts retain their duty to enforce Fed. R. Civ. P. 45's protections, particularly the mandate that a subpoena should be tailored to avoid imposing undue burden or expense. Fed. R. Civ. P. 45((d)(1); see Walgreen Co., 2018 WL 6696042, at *2 (court retains power conferred in Fed. R. Civ. P. 45); Alliance Healthcare Servs., Inc. v. Argonaut Private Equity, LLC, 804 F. Supp. 2d 808, 811 (N.D. Ill. 2011) (same).

In sum, in the unique context of an arbitral subpoena, the FAA reserves materiality (in other words, relevance) determinations for the arbitration panel, while courts still have the Fed. R. Civ. P. 45 duty to assess the subpoena's burden and ensure that the third party is not subject to "undue burden or expense." Fed. R. Civ. P. 45(d)(1); see Moyett v. Lugo-Sanchez, 321 F. Supp.

---

[2] Me. Cmty. Health Options v. Walgreen Co. involves a different subpoena issued in the same Arbitration by the same Arbitration Panel whose subpoena to CVS is in issue here.

3d 263, 267 (D.P.R. 2018) (analyzing burden imposed by arbitration subpoena). These principles limn this Court's task – to rule on CVS's burden objections, but to defer to the Arbitration Panel for the determination of CVS's objections based on lack of materiality.

    2.    <u>Analysis</u>

Turning to the subpoena placed in issue by the Petition, its requests fall into three categories, each of which calls for an independent burden analysis. First, Health Options asks for price lists (Request 1); there is no burden associated with this request because CVS reports that it does not maintain price lists. Therefore, it is ordered to respond. Second, the subpoena asks for transaction data (Request 3). Third, the subpoena requires CVS to search for and produce speaking documents, one request is based on a "sufficient to show" standard (Request 4) while the others are all-inclusive, seeking "all communications" or "all documents and communications" (Requests 2 and 5). The transaction data and speaking document requests raise burden issues that I recommend be resolved as follows.

### *<u>Transaction Data (Request 3)</u>*

Health Options' subpoena originally sought a staggering quantum of transaction data – nationwide for a thirty-month period – reflecting every CVS pharmacy transaction for individuals who paid without insurance (whether by cash, pursuant to the CVS HSP or otherwise). To address CVS's burden concerns, Health Options expressed its willingness to narrow the scope of the data request in several significant ways. First, it is now seeking transaction data only for Maine and New Hampshire; second, it is looking for transactions only involving drugs purchased by Health Options' members; third, it is amenable to accepting transactional data in a format previously assembled by CVS in other matters; and fourth, it has agreed to waive its request for a witness and to accept a sworn affidavit. ECF No. 14 at 4.

9

CVS's confidentiality and collateral-use burdens are addressed by Health Options' agreement to a protective order to be entered in the context of the Arbitration protecting the confidentiality of the data (and any other documents or information produced by CVS) and strictly limiting their access and use to the Arbitration. I have relied on these compromises, and I incorporate them into my recommendation that CVS must comply with the subpoena.

The time period to be produced is an unresolved matter affecting CVS's burden. CVS has advised the Court that it has twenty-five months of data already assembled, for which the burden of production is significantly lower. On the other hand, to produce the remaining months that Health Options seeks, which are not readily available, would be very burdensome indeed. Health Options remains insistent that it must have all thirty months of data.

Despite Health Options' burden-reducing concessions and even if the Court were to limit its production to the twenty-five months already assembled, CVS argues passionately that it should not have to produce any transaction data. It contends that, for each transaction it did with a Health Options member, it provided Navitus with data that populated the "NCPDP Field 426-DQ." CVS argues that this constitutes all that is conceivably relevant to the Arbitration because the cash price it charged to uninsured customers on the same day is always the same as the price that the pharmacist input for Field 426-DQ, unless the non-insurance customer was charged the HSP price, which was a uniform and publicly available price. Therefore, CVS asserts, the relevant data is what is already in the possession of Navitus and there is no need to burden a third party like CVS. With equal passion, Health Options contends that the CVS transaction data will show prices charged to uninsured customers that are not reported to Navitus in field 426-DQ; it contends that this information is essential for its experts to develop the analysis needed for both the liability and damages portions of its claim against Navitus.

This is not a fight that this Court can or should resolve. The proposition that these data are not relevant at all is a materiality matter that must be determined by the Arbitration Panel pursuant to In re Security Life Ins., 228 F.3d at 870-71; Walgreen Co., 2018 WL 6696042, at *2; Festus, 432 F. Supp. 2d at 1380. CVS points out – correctly – that it has not yet presented its non-materiality argument to the Panel. It is the Panel that understands what is material to the dispute before it. It is beyond this Court's purview to attempt to untangle whether some or all of the transaction data sought are material or not. Rather, the Court's focus is limited to resolving the Fed. R. Civ. P. 45 burden issue. Walgreen Co., 2018 WL 6696042, at *2; Moyett, 321 F. Supp. 3d at 267.

Based on the foregoing, as to the transaction data, I recommend that the petition be granted to the extent that CVS should be ordered to provide the less-burdensome-to-produce twenty-five months of transaction data for CVS pharmacy transactions in Maine and New Hampshire for individuals who paid without insurance, further limited as set forth above. Based on CVS's representation of how long this will take, I further recommend that CVS be ordered to comply within three weeks of the Court's adoption of this recommendation. As to the remaining time period, if, after Health Options has reviewed the initial twenty-five-month tranche, it believes that the data for the remaining five-month period is also material, it may ask the Arbitration Panel (with notice to CVS) to rule that such data is material. If the Panel so rules, I recommend that CVS shall also be under order by this Court to comply and produce the data for the remaining five months. Finally, this recommendation that CVS must comply by producing any transaction data is based on Health Options' representation that the Arbitration Panel has already deemed such data to be material. If CVS moves to quash the subpoena based on the non-

materiality of the data in the Arbitration and the Panel grants that motion, this Court's order of enforcement as to the transaction data may be deemed to be void.

### *Speaking Documents (Requests 2, 4 and 5)*

The first of Health Options' three speaking document requests (Request 2) asks the Court to order CVS to search for and produce "all communications" (presumably documents reflecting all communications) with anyone external to CVS who maintained a price list and communicated with CVS about its pricing policies applicable to transactions with individuals who pay without insurance. This request appears to the Court to be hopelessly broad and burdensome, sweeping far beyond what is appropriate for a Fed. R. Civ. P. 45 subpoena. As crafted, it would require the identification of custodians, the use of search terms and burdensome follow-up to review before producing. Despite the mandate of Fed. R. Civ. P. 45(d)(1), Health Options focused very little effort on explaining what it is after and did not suggest any burden-reducing compromises. I recommend that the Court sustain CVS's objection to complying with this request based on the burden that compliance would impose.

The second speaking document request – Request 4, looking for documents "sufficient to show" how CVS calculated the U&C price that it submitted to Navitus – seems more tailored and focused on Health Options' contention that it needs to understand CVS's methodology for calculating its U&C prices. As to burden, which is what this Court must consider, compliance requires CVS only to provide a single document if that is sufficient to describe its methodology. To the extent that it would reduce the burden, I recommend that CVS be permitted to comply at its option by providing a sworn description of its methodology in lieu of hunting down and producing one or more specific documents.

Based on the foregoing, as to Request 4, I recommend that the petition be granted to the extent that CVS should be ordered to produce (at its option) either documents sufficient to describe or a sworn statement that describes its methodology for calculating its U&C prices, as pertinent in Maine and New Hampshire and related to the drugs sold to Health Options' members. I further recommend that CVS be ordered to comply within three weeks of the Court's adoption of this recommendation. As with the transaction data, this order that CVS must comply by responding to Request 4 is based on Health Options' representation that the Arbitration Panel has already deemed such material to be material. If CVS moves to quash the subpoena based on the non-materiality of such material in the Arbitration and the Panel grants that motion, this Court's order of enforcement as to Request 4 may be deemed to be void.

The third speaking document request – Request 5 asks for documents relating to the effect of cash, HSP pricing or minimum retail prices on CVS's U&C price – reverts to the sweeping requirement to search for and produce "all documents and communications." As with Request 2, compliance would require the identification of custodians, the use of search terms and burdensome follow-up for pre-production review. Request 5 echoes what one might expect if CVS were the counterparty in the case, whose U&C prices were in issue before the Arbitration Panel. But it is not. Further, with Health Options' receipt of the transaction data and the response to Request 4, it is difficult to see how or why Health Options needs to inflict such a seemingly gratuitous burden on CVS. Based on the burden of compliance and the absence of any representation by Health Options establishing materiality, I recommend that the Court sustain CVS's objection to complying with Request 5.

## II.     CONCLUSION

Based on the foregoing, I recommend that the Petition (ECF No. 1) be granted in part and denied in part as set forth above.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 9, 2020